Daniel, J.
The decree of the Circuit court, in so far as it sustains the deed of trust of the 30th of May 1842, is, I think, correct. The fact that a deed of *355 trust embraces articles which must perish or be consumed in the use, before a sale of them can be made according to the terms of the deed, is not one which, of itself, necessarily shows the deed to have been made with a fraudulent design. The amount, in number or value of such articles, may be so inconsiderable, as compared with the main subjects of the trust, as to justify the conclusion that they were embraced through inattention of the parties to the inconsistency of providing a security out of property which, from its nature, would necessarily perish before it could be made available as a means of satisfying the trust. Or the deed may embrace other property, to the improvement, support or sustenance of which, such perishable property is essential; and in such last supposed case the fact that the perishable property is embraced in the deed, so far from being indicative of a fraudulent purpose, might rather serve to show an honest and a provident design and effort to make the main subjects of the trust a more certain and productive security. It would be but fair in such case to construe the deed in accordance with the probable design and motives of the parties, and to relieve it of any apparent inconsistency, by holding the provisions in regard to the continued possession, and the sale of the property, as intended to apply only to such of it as from its nature might reasonably be expected to be in existence at the day of sale.
The main objection to the deed is founded on the fact that it embraces growing crops of wheat, rye, corn and oats, which the bill alleges would be severed and consumed before the trustee would, under the provisions of the deed, be at liberty to execute the trust. It seems to me that it is a fair answer to this objection to say, that even if these crops were of such a nature that they could not be preserved till the day of sale, it would be harsh to construe the provision of the deed *356 in relation to them as designed merely to cover them up from creditors; seeing that the deed also embraces a number of horses and a cow, to the sustenance of which they would not, according to the testimony, probably be more than adequate. Besides, we have no proof that these crops are of such a nature as necessarily to perish before the day of sale: On the contrary, common observation and experience prove that they may be preserved without material loss or deterioration, for a longer period.
There is, therefore, nothing on the face of the deed, to show that the property conveyed was not designed by the parties to be a substantial and bona fide security for the debts, to secure the payment of which it was made.
It remains to be considered whether the appellee Paris had, at the date of his surrender, on taking the oath of an insolvent debtor, any such interest under his father’s will, in the property sought to be subjected to the payment of the appellant’s demand, as can, in equity, be so subjected.
A court of equity will not, in general, assume the exercise of .a discretionary power vested in a trustee, nor interfere to control the trustees acting bona fide in the exercise of their discretion. Nor will a suit be entertained to compel the trustees to exercise their power. And the refusal of a trustee to exercise a purely discretionary power is not a breach of trust for which he can be removed from office, although the trustee assigns no conclusive reason for the refusal, and the proposed act is apparently beneficial to the trust estate. Hill on Trustees 715.
Again: On page 725 of the same treatise, the author says, the fourth and last class of discretionary powers is where the discretion is to be exercised on matters of pure personal judgment. For instance, when the trustees are empowered to give their opi *357 nion on the good or ill conduct or merits of an individual r or to determine the propriety or impropriety of continuing the payment of an annuity; or to give their approbation to a settlement. The trustees alone are competent to exercise these powers, for they may have private and peculiar grounds for arriving at a proper conclusion, into which the court could not providentially enquire, and which the trustee might refuse to disclose. The exercise of such authorities cannot in general be assumed or even controlled by the court. If, however, a trustee is actuated by fraudulent or improper motives in exercising or refusing to exercise his discretionary powers, a court of equity, upon proof of the improper conduct, interposes its jurisdiction on a totally different principle—not for the purpose of exercising the discretion committed to the trustee, but to check or relieve from the consequences of an improper exercise of that discretion. Ibid. 716.
If the rights of John Paris the son had been left by the will of his father dependent on the mere will or discretion of the trustees, to be exercised or not as they might please, without reference to the conduct of the son ; or if the trustees had never expressed themselves satisfied of his reformation; or on being called on to express their opinion as to his habits and steadiness, had either disclaimed doing so, or had said that from “ proper information” they had formed the judgment that it would not be prudent to entrust him with the management of the estate intended for his benefit, it would have been difficult, in view of the foregoing authority, to find any ground on which the interference of a court of equity could have been justified. But I do not think that the will is to be so construed: And the course of the trustees has been exactly the reverse of that just supposed. The fifth clause of the will, after directing the funds arising from the sale of the property to be loaned out, and the interest to be paid *358 over annually to the son, proceeds, “but should my executors judge, from proper information of my son’s habits and steadiness, that it would be prudent to entrust him with the full management of the funds intended for his benefit, then it is my will that they turn over the whole into his hands." Let it be that the executors are the sole judges whether the conduct of the son has been such as to render it prudent that he should be invested with the estate, and that no court has a right to correct their judgment, however erroneous it might be, yet when their judgment is formed and announced, and is in favor of turning over the estate, does there not arise a duty on their part to do so ? Whenever the trustees, in the exercise of their judgment and discretion, have arrived at the conclusion that it is prudent the son should have the property intended for his benefit, free from their control, the testator says, it is his will that he should so enjoy it? Is not any further holding by, or control over the property on the part of the trustees thenceforward in conflict with the mandatory language of the will ? Suppose the will to have been in all respects, as it is, with the exception that the “turning over of the estate into the hands of the son” had been made dependent on the approval of his conduct by persons other than the executors, would not the executors, upon being certified of such approval, have been bound at once to invest him with the title ? And are the rights of the son consequent on the approval of his conduct, modified by the fact that the persons who by the will are to judge of his conduct and those who upon' the approval of it are to turn over the property to him, are the same ? It seems to me whenever the son shows that his conduct has met with the approbation of the executors, he does all which the testator intended he should do in order to entitle him to the free and uncontrolled enjoyment of the bounty in *359 tended for him. This he has done. In their answer to the bill filed by him, and in their depositions taken in this cause, the executors express themselves satisfied of his reformation; and in the latter they say that such is their conviction on the subject, that they would, at all times, since his marriage, have been willing to place the full control and management of the estate in his hands. Besides, they are parties to this suit, and have not denied the allegations of the bill. They have exercised their discretion and pronounced their judgment in the only matter which was left to their discretion. From the moment of their having done so the right or power in or over the estate intended for the testator’s son remaining in them, call it by whatever name, became subject to the command, in the will, to turn it over to him free from their control. They thenceforward became trustees of an estate, to the full and unrestricted enjoyment of which another is beneficially entitled under the provisions of the instrument whence all their powers are derived.
The executors, in their answer to the bill filed by the appellee Paris, having admitted his reformation, he had, I think, a right to insist on a decree directing them to convey to him the legal title to the property held by them for his benefit. The decree whieh was rendered neither affirmed nor denied that right. It is true that the court then expressed the opinion, which it has carried out in the decree rendered in this cause, viz: that it was a matter' resting entirely in the discretion of the executors, (notwithstanding the reformation of Paris and their approval of his conduct,) whether they would invest him with the legal title to the estate. Yet the decree went no further than to stay the sale of the property, except so far as might be necessary for the payment of debts and legacies. The waiver for the present by Paris of a decree direct *360 ing the executors to convey the title, did not, I think, conclude his rights, nor deprive him of the power, at any time thereafter, to ask for and insist upon such a decree. The executors still remained clothed with the legal title, but they still stood, as they had always stood, ever since they had announced their judgment 'of approval of the conduct of Paris, simply as trustees bound by the requirements of the will, and in foro conscientice, to invest him with the title and control of the estate. In this state of things, he took the benefit of the insolvent debtors’ oath, and whatever right he had, passed to the sheriff for the benefit of his creditor the appellant. In asking the court to subject the property to the satisfaction of his demand, the appellant, it seems to me, -seeks no interference with the exercise of any discretion with which the trustees are clothed by the will. He in effect only asks the court to declare, what they have admitted and still admit, that the condition on which they were to convey the estate has been complied with, and to announce the conclusion which follows, that it stands, in equity, freed from their control, and subject to the contracts and engagements of the beneficiary. The case is a peculiar one, and counsel have not furnished us with any precedents, nor have I been able to find any which would seem to rule it. The definition of powers and trusts, as given in the authorities, may be sufficiently plain, yet it often becomes a difficult task, in construing the language of an instrument, to determine whether it confers a mere power or a power in the nature of a trust, and consequently, whether the power is one over the exercise of which a court of equity can take any control. When the executors are clothed with an arbitrary discretion, an absolute power to appoint or withhold the bounty, as in Pink & others v. De Thuisey, 2 Madd. R. 423, where the executor was left at liberty to give to the legatee one thousand pounds, “ if he found the thing *361 proper,” or as in the case of Weller v. Weller, (cited in the foregoing case as having been decided at the rolls,) where the testator gave his son, who. had been vagant, a sum of money, with a power to the executors to advance more, “ if they thought proper,” the courts have, I think, very properly refused to decide upon the propriety of the executor’s withholding the legacy, holding that to do. so. would be to assume an authority confided solely to the discretion of the executors. But in a case like this, where the judgment and discretion of the executors; are limited and directed to a specified enquiry, the reformation of the conduct of the legatee, and where in the event of such judgment being favorable, the will imperatively requires the executors to hand over the legacy; where the executors have exercised their judgment and discretion, have declared themselves satisfied with the result, and have admitted their willingness to hand over the estate; where a refusal on their part to execute the power could be from no motive connected with the conduct of the beneficiary, but would be directly in conflict with their own convictions of right and their own views of the intention of the testator; it seems to me that a claim to the interposition of a court1 of equity is presented, which it cannot reject without violating the principles which usually govern its actionthat the executors stand before the court, not in the attitude of persons clothed with a mere power, but as charged with an acknowledged trust or duty, which, in equity and good conscience, they are bound to perform.
The only person here making opposition to the performance of this duty is the beneficiary, the appellee Paris. Without stopping to comment on the unenviable attitude in which he has placed himself before the court, it is obvious to remark that no desire of his that a power over the estate shall remain in the executors, can prejudicially affect the rights of the appellant.
*362 Kegarding that power as one in the nature of a trust, which the executors, at the date of the surrender by Paris, stood bound to perform, I think that he then had such an interest in the estate as could pass for the benefit of his creditor, and that the latter has a right to have it subjected to the payment of his demand.
I am, therefore, of opinion to reverse the decree of the Circuit court, and to render, instead thereof, a decree dismissing the bill so far as it seeks to invalidate the deed of trust; and remanding the cause, in order that the interest of Paris in his father’s estate may, after a’settlement of the proper accounts, be subjected to the satisfaction of the appellant’s debt.
The other judges concurred in the opinion of Daniel, J.
The decree was as follows:
The court is of opinion, that the deed of trust of the 30th of May 1842 is bona fide, and not made to delay, hinder or defraud creditors; and is, therefore, valid against the claim of the appellant. The court is further of opinion that the appellee John Paris, by virtue of the power conferred, upon the executors by the will of John Paris the elder, and the action of the executors under it, acquired, and held, at the date of his surrender as an insolvent debtor, at the suit of the ■appellant, an interest in the estate of his father, which passed by said surrender to the sheriff of Augusta county, and which ought to be subjected to the payment of the appellant’s debt. So much of the decree ■as dismisses the bill as to the appellee Fultz, and orders the proceeds of the sale of the trust property to be paid to the parties entitled under the trust deed, is, therefore, affirmed; and so much of the decree as denies the appellant’s right to have satisfaction of his debt out of the interest of the appellee Paris in his *363 father’s estate, is reversed with costs to the appellant as against the appellee Paris. And this cause is remanded to the Circuit court, in order that the accounts of the executors may he settled, and that the debt of the appellant may be satisfied by a sale of the tract of land of one hundred and fifteen acres in the bill and proceedings mentioned, if a resort thereto shall become necessary»